FILED
01/08/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 15, 2019 Session

## IN RE ESTATE OF GLADYS YARBORO LLOYD

**Appeal from the Chancery Court for Knox County**
**No. 76389-2          Robert E. Lee Davies, Senior Judge**

_____

## No. E2017-02563-COA-R3-CV
_____

In this probate proceeding, the trial court applied the no contest provision of the will to prevent the beneficiary from inheriting under the will, holding that certain actions and issues raised by the beneficiary triggered the provision. The court also imposed sanctions pursuant to Rule 11.03 of the Tennessee Rules of Civil Procedure against the disinherited beneficiary and her attorney for filing an improper lien on real property of the decedent and in refusing to remove the lien, thereby requiring the estate to seek judicial relief. The beneficiary and her attorney appeal the application of the no contest clause and the imposition of sanctions. Upon our review, we discern no error warranting reversal and accordingly, affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Paul Emmet Kaufman, Atlanta, Georgia, for the appellant, Yarboro Ann Sallee.

Wynne du M. Caffey-Knight and John Towers Rice, Knoxville, Tennessee, for the appellee, Brian Krebs.

Brown F. Lloyd, Knoxville, Tennessee, Pro Se.[1]

## OPINION

Gladys Yarboro Lloyd died on May 14, 2015, in Knoxville, Tennessee, at the age of 83; she was survived by her husband, Brown Lloyd, and two daughters from a

---

[1]  Mr. Lloyd elected not to file a brief and has requested that he be listed as a "nonparticipating party" in this appeal and that the "case be submitted on the record and the brief filed by Mr. Krebs."

previous marriage, Yarboro Ann Sallee and Yancey Krebs. Ms. Lloyd died testate, and her will named her husband as Personal Representative and her son-in-law, Brian Krebs, as successor Personal Representative. On May 19, 2015, Mr. Lloyd executed an affidavit declining to serve as Personal Representative and consenting to the appointment of Mr. Krebs; on June 8, Mr. Krebs filed a petition to admit the will to probate, and the will was duly admitted and letters testamentary issued to him on June 9.

On October 30, 2015, Ms. Sallee, who is an attorney and proceeded *pro se*, filed a pleading which consisted of three motions; one was entitled "Motion for Full Accounting by Executor of All Financial Matters Including the Matter of the Million Dollar Appeal of Benefits My Mother Owned of Over One Million Dollars", one entitled "Motion for Quantum Meruit Payment for Work Performed by Attorney Sallee for Three Years in Benefits Million Dollar Case", and one entitled "Motion to Compel the Production of All Materials and Files Related to the Motions." The Personal Representative responded to the motions on February 2, 2016; pertinent to the issues raised in this appeal, the response states:

### RESPONSE TO MOTION FOR FULL ACCOUNTING

3. The Movant is not, in her individual capacity, a beneficiary under the Will. The Movant is the beneficiary of demonstrative bequests of personal effects pursuant to a writing left by the Decedent in accordance with Article I, Paragraph C of the Will, a copy of which was filed with the Court along the original Will. The Personal Representative intends to comply with wishes of the Decedent as set forth in this writing. Accordingly, the Movant lacks standing to request said accounting.

4. Further, as to the issue of the Movant's entitlement to an accounting, the Personal Representative notes that: (i) the Movant is the beneficiary of a trust which is merely the recipient of a specific devise of real property under Article I, Paragraph A of the Will, (ii) said specifically devised real estate is part of the probate estate pursuant to the fifth paragraph of Article II, (iii) the decedent was survived by her husband, Brown F. Lloyd, and accordingly the sole beneficiary of the Decedent's residuary estate under Paragraph III, Paragraph A, is a trust of which the decedent's husband is the current beneficiary.

### RESPONSE TO MOTION FOR QUANTUM MERUIT

1. The Motion as filed does not constitute a valid claim against the Decedent's estate under *T.C.A.* §30-2-307 as it does not include an itemized statement of account, copy of the written instrument or certified judgment or decree as required by *TC.A.* §30-2-307(b), does not appear to have been

2

filed in triplicate as required by *T.C.A.* §30-2-307(c) and as a purported claim is void *ab initio*.

2. A copy of the Notice to Creditors was provided to the Movant on November 17, 2015 via both certified mail return receipt requested (which was returned as unclaimed) and regular U.S. Mail, a copy of which is attached as **Exhibit B**. To date, no claim has been filed, and the time for filing a valid claim pursuant to *T.C.A.* §30-2-307 has passed. Accordingly, any claim which might subsequently be filed against the Estate by the Movant on *quantum merit* or any other matter on any grounds is time barred.

Over the next eight months, Ms. Sallee filed more than ten similar pleadings, most of which contained multiple motions illustrating her dissatisfaction with the administration of her mother's estate and prayers for relief of various sorts.[2,3]  On June

---

[2]  Examples of the pleadings included one filed February 8, 2016:

1.  PETITION FOR THE REMOVAL OF EXECUTOR BROWN F. LLOYD AND FOR THE REMOVAL OF ALTERNATE EXECUTOR BRYAN KREBS AND TO NAME YARBORO SALLEE AS EXECUTOR OF THIS ESTATE
2.  PETITION TO REMOVE BROWN LLOYD AND BRYAN KREBS AS TRUSTEES AND NAME YARBORO SALLEE AS TRUSTEE AND AN UNBIASED THIRD PARTY AS TRUSTEE
3.  PETITION FOR REMOVAL OF ESTATE ATTORNEY LAUREN BROWN AND HER FIRM DUE TO MALFEASANCE AND MISHANDLING OF THE ESTATE
4.  ALL ITEMS BE ORDERED DISTRIBUTED TO PETITIONER IMMEDIATELY

And one filed February 26, 2016:

1.  MOTION TO STRIKE FEBRUARY 18TH SECRET HEARING FOR GROSS IMPROPRIETY AND FOR CLERK HOGAN TO FORMALLY RECUSE HIMSELF DUE TO GROSS IMPROPRIETY & MOTION TO COMPEL PRODUCTION OF THE TRANSCRIPT CREATED BY GAMMELTOFT'S COURT REPORTER IN THE INTEREST OF FAIRNESS
2.  RENEWED MOTION TO COMPEL PRODUCTION OF FULL ACCOUNTING AND TO DENY MOTION TO FRAUDULENTLY CLAIM PETITIONER HAS CHALLENGED WILL WHEN THIS WAS SPECIFICALLY NOT DONE AND FORMALLY ASSIGN PETITIONER AS CO-TRUSTEE PURSUANT TO THE WILL
3.  RENEWED MOTION TO REMOVE EXECUTOR BROWN LLOYD AND BRYAN KREBS AS FAILING IN THEIR FIDUCIARY DUTY TO PETITIONER BY ACTING GROSSLY UNJUSTLY AND ABUSIVELY AND NOT COMPETENTLY WHEN COMPARED WITH OTHER INDIVIDUALS WHO RECEIVED "BEQUESTS".
4.  MOTION IN OPPOSITION OF GAMMELTOFT'S MOTION TO MAKE "MEMORANDUM" PART OF THE AND DEMAND BY PETITIONER FOR PRODUCTION OF ALL ITEMS LISTED IN THIS "MEMORANDUM" TO

3

24, 2016, the Estate filed a motion seeking a declaratory judgment as to whether Ms. Sallee's conduct constituted an attack on the validity of the Will, thereby triggering the forfeiture clause at Article VI, paragraph 7 of the will, and resulting in the loss of her inheritance.[4] On December 2, 2016, the trial court entered an order stating that "upon the agreement of all parties concerned and the entire record as a whole, the heir, Yarboro Ann Sallee hereby withdraws all Motions heretofore filed."

The trial court held a hearing on the Estate's motion on March 21, 2017, and entered an order on April 6, holding that "[t]he actions of Yarboro Ann Sallee were a contest or attack on the validity of the Will of Gladys Yarboro Lloyd" and that "[t]hese multiple attacks were not made in good faith or with reasonable justification." The trial court invoked the clause and excluded Ms. Sallee from receiving any disposition under

---

PROVE NOT DISBURSED PURSUANT TO LAUREN BROWN'S EMAIL OF LAST MONTH DENYING ANY ITEMS HAD BEEN DISTRIBUTED.HER MOTHER THAT WAS GIVEN BY WILLIAM EDGAR SALLEE SR. TO DECEDENT.

5. RENEWED MOTION TO COMPEL PRODUCTION OF THE RENT OWED PETITIONER AND ALL JEWELRY IN PARTICULAR THE ENGAGEMENT RING LEFT TO PETITIONER BY DECEDENT WHEN RENT GWEN TO FORMER SISTER LYNN KREBS MONTHS AGO

6. MOTION TO BAN EXECUTOR AND ESTATE ATTORNEY FROM ALLOWING ANY SALE OF THE 112 PRATT AND PROPERTY EXCEPT TO SELL IT TO PETITIONER

7. *MOTION TO ORDER THE IMMEDIATE HALT OF ANY FINANCIAL ACTIONS BY EITHER TRUSTEE, EXECUTOR OR ESTATE ATTORNEYS.*

[3] Also during this time, Ms. Sallee filed suit in federal court against Knox County and the Clerk and Master, seeking recovery of the sum of $330,000, which she alleged the Clerk and Master and his office had "misapplied and mishandled." After initiating the federal suit, Ms. Sallee filed numerous motions in the instant proceeding to recuse the Clerk and Master as well as the judges assigned to hear the case. In due course, the Clerk and Master recused himself, along with the original Knox County Chancellor, and the Anderson County Chancellor who was sitting by interchange; the Tennessee Supreme Court appointed Senior Judge Robert E. Lee Davies to hear matters in this proceeding on January 4, 2017.

[4] The forfeiture clause states:

DEFINITIONS AND CONSTRUCTION PROVISIONS

\*\*\*

7. <u>No Contest</u>. If any person should, in any manner, directly or indirectly, contest or attack the validity of this Will by filing suit against my Personal Representative(s) or otherwise, then that contesting person and all descendants of that contesting person shall be specifically excluded from receiving any disposition under this Will. Furthermore, no parent may contest this Will on behalf of a minor child who is a beneficiary of this Will and if they attempt to do so, that parent will be excluded from receiving any disposition under this Will.

4

the will. Ms. Sallee moved to alter or amend the order, asserting that she had not challenged the validity of the will and "would have had a good faith basis to challenge the validity of the will had she chosen to." The court granted the motion to "allow Ms. Sallee to give testimony in order to explain her intent for the pleadings which she filed in this case . . . so that the Court can make a further determination regarding the requirement of good faith and probable cause." An evidentiary hearing was held on September 8, at which Ms. Sallee testified, and the court entered an order on September 25 affirming the April 6 order. [5],[6]

On July 12, 2017, Ms. Sallee and her counsel, Paul Kaufman, recorded a lien against property located at 112 Pratt Lane, Oak Ridge, which was owned by Ms. Lloyd at her death, to secure payment of Ms. Sallee's quantum meruit claim for services rendered in the life insurance benefits matter referenced in the October 30, 2015 pleading. The Personal Representative moved to require Ms. Sallee to release the lien; at an August 15, 2017 hearing, the court granted the motion and, on its own initiative, found that sanctions should be imposed pursuant to Rule 11.03 of the Tennessee Rules of Civil Procedure against Ms. Sallee and Mr. Kaufman for filing an improper lien. An order was entered on August 31, *nunc pro tunc* to August 15, memorializing the oral ruling and directing the Personal Representative's attorneys to file affidavits of their time and expenses related to getting the lien released and to serve those affidavits on Mr. Kaufman, "who may show cause for why sanctions should not be awarded in that amount." The court designated the order as a final order pursuant to Rule 54.02, and Ms. Sallee and Mr. Kaufman filed a notice of appeal on September 14.[7]

---

[5] On June 8, 2017, Ms. Sallee, now represented by counsel, filed a pleading styled "BENEFICIARY YARBORO ANN SALLEE'S NOTICE OF WILL CONTEST, DEVISIT [sic] VEL NON ACTION, ELECTION OF KNOX COUNTY CIRCUIT COURT," in which she challenged the validity of the will on various grounds, and requested that Ms. Lloyd's will be set aside. On July 12, 2017, Ms. Sallee filed a document styled "RENEWED MOTION FOR CERTIFICATE OF WILL CONTEST FILED ORIGINALLY ON JUNE 8[TH], 2017," in which she invoked Tennessee Code Annotated section 32-4-101, *et seq*., and asserted the eight specific grounds of the contest. On August 31, 2017 the trial court entered an order reciting that the Notice filed June 8 and Renewed Motion filed July 12 were withdrawn with prejudice; the order was entered as a final judgment pursuant to Rule 54.02. These pleadings were filed and the order entered after the court had entered the April 6, 2017 order holding that Ms. Sallee's actions constituted "a contest or attack on the validity of the Will of Gladys Yarboro Lloyd," and that "[t]hese multiple attacks were not made in good faith or with reasonable justification," thereby excluding Ms. Sallee from receiving any disposition under the will pursuant to the no contest clause, and prior to the denial of the motion to alter or amend filed by Ms. Sallee. In light of this unique procedural history, we will not consider the effect of the Notice and Renewed Motion in our review of the court's ruling on the Estate's motion for a declaratory judgment as to the applicability of the no contest clause.

[6] On October 27, Ms. Sallee filed a notice of appeal of this order. In this Court, the case was assigned the number E2017-02563-COA-R3-CV.

[7] The appeal of the August 15 order imposing sanctions was docketed as No. E2017-01860-COA-R3-

After the attorneys filed their affidavits, the court entered an order on September 21, awarding a judgment in the amount of $16,529.09 against Mr. Kaufman and Ms. Sallee for attorneys fees incurred by the estate. On March 27, 2018, Ms. Sallee and Mr. Kaufman filed a motion pursuant to Rule 60.02(2) and (5) to set aside the sanctions, which the court granted in order to permit Mr. Kaufman to make arguments "which he failed to make prior to the entry of the order on September 25 [sic], 2017." By order entered May 15, 2018, the trial court reaffirmed the August 24, 2017 order awarding sanctions. Ms. Sallee and Mr. Kaufman filed a notice appealing this order, which was docketed as No. E2018-00993-COA-R3-CV. The trial court subsequently entered an order staying all efforts to execute the judgment regarding the Rule 11 sanctions pending this appeal. By order entered August 27, 2018, this Court consolidated appeals Nos. E2017-02563 and E2018-00993.

In their brief on appeal, Appellants state fifteen issues for resolution.[8] The

CV; the notice of appeal stated:

> Notice is hereby given that Yarboro Sallee, Beneficiary and her attorney Paul Kaufman hereby appeal to the Court of Appeals from all aspects of the order dated August 31, 2017, nunc pro tunc to August 15, 2017 designated as a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02 from which appeal may be taken, even though the amount of the Rule 11 sanctions has not been determined.

Ms. Sallee failed to file a transcript of the evidence, a statement of the evidence, or a notice that neither would be filed, as required by Rule 24 of the Tennessee Rules of Appellate Procedure, resulting in the dismissal of the appeal. After the mandate was issued, Ms. Sallee and her attorney filed a motion to recall the mandate, to extend the time to comply with Rule 24, and to reinstate the appeal; the basis of the motion was asserted to be the "excusable neglect because of the decompensated mental illness" of Mr. Kaufman attorney and because "this case is not ripe for appeal because there remain unresolved issues in the trial court." The motion was denied; however, we directed that:

> [Th]e Notice of Appeal filed on October 27, 2017, and directed to the final judgment in the proceedings below entered in late September of 2017 [No. E2017-02563], shall be considered by the Appellate Court Clerk as initiating a new appeal as of right from that final judgment. The notice received from the Trial Court Clerk on January 4, 2018 [indicating that Ms. Sallee had not filed a transcript of the evidence in case E2017-01860], shall be considered a part of the appeal initiated by the Notice of Appeal filed on October 27, 2017. The appellants shall have sixty (60) days from the date of entry of this order within which to comply in the appeal from the final judgment with Rule 24 of the Tennessee Rules of Appellate Procedure.

Thus, in this appeal we will consider the rulings imposing sanctions against Ms. Sallee and Mr. Kaufman and holding that Ms. Sallee's conduct of this proceeding invokes the no contest clause of Ms. Lloyd's will.

[8] In their reply brief they categorize the issues into three areas:

6

arguments in their brief do not address all fifteen issues, and most of the statements made in the argument section of the brief are not supported by reference to the record or citation to legal authority. From our review of the briefs of the parties as well as the record we discern two dispositive issues: whether the trial court erred in its construction and application of the no contest clause in the will, and whether the imposition of sanctions was proper.[9]

## II. ANALYSIS

## A. The No Contest Clause

In *Winningham v. Winningham*, our Supreme Court acknowledged that, while a forfeiture clause in a will is not void, it will not be enforced where the will contest is undertaken in good faith:

> This Court has recognized that a forfeiture provision in a will is not void as against public policy. *Tate v. Camp,* 147 Tenn. 137, 149, 245 S.W. 839, 842 (1922); *Thompson v. Gaut,* 82 Tenn. 310, 314 (1884). However, it has

---

a) Issues 1 through 4 address errors regarding interpretation and application of the *in terrorem* clause of the will;

b) Issues 5 through 10 . . . address the objections Appellant has voiced about the *manner* in which the Appellee (or his counsel) were failing to fulfill their duties in executing the terms of the Will, because of bad blood bias and conflicts of interest, mismanagement of assets, and a failure to honor the fiduciary duty required in the relationship and dealings with Appellant;

c) Issues 11 through 15 address the sanctions assessed *sua sponte* by the court against Ms. Sallee and Mr. Kaufman for an action taken to secure a quantum meruit claim against the estate after the trial court had already disinherited Ms. Sallee under the *in terrorem* clause.

[9] In *Forbess v. Forbess,* this Court observed that:

> This court has repeatedly held that a party's failure to cite authority for its arguments or to argue the issues in the body of its brief constitute a waiver on appeal. *Newcomb v. Kohler Co.,* 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (failure "to cite to any authority or to construct an argument regarding [a] position on appeal" constitutes a waiver of the issue); *Bean v. Bean,* 40 S.W.3d 52, 55–56 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.").

370 S.W.3d 347, 355 (Tenn. Ct. App. 2011).

been the rule since *Tate v. Camp,* that a forfeiture provision will not be enforced where a contest is pursued "in good faith and upon probable cause." After considering decisions from other jurisdictions, the Court in *Tate v. Camp* approved the following from *South Norwalk Trust Co. v. St. John,* 92 Conn. 168, 101 A. 961, 963 (1917), "'Where the contest has not been made in good faith, and upon probable cause and reasonable justification, the forfeiture should be given full operative effect. Where the contrary appears, the legatee ought not to forfeit his legacy.'" *Tate v. Camp,* 147 Tenn. at 155-56, 245 S.W. at 844.

966 S.W.2d 48, 51 (Tenn. 1998). Thus, we begin by examining the actions of Ms. Sallee to determine whether the evidence supports the trial court's holding that those actions effectively initiated a will contest and whether the actions were pursued in good faith and upon probable cause and reasonable justification. Our review of the court's factual determinations is *de novo* upon the record, accompanied by a presumption of correctness of those findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). We review the court's conclusions of law *de novo* without affording any presumption of correctness to those conclusions. *In re Estate of Milam*, 181 S.W.3d 344, 353 (Tenn. Ct. App. 200) (citing *In re Estate of Vincent,* 98 S.W.3d 146, 148 (Tenn. 2003)).

The Personal Representative sought to have the court determine whether Ms. Sallee's filings of "approximately twenty-six motions and/or petitions" "have constituted an attack on the validity of the Will such as to trigger forfeiture of her inheritance under the in terrorem clause under the Will."

In the April 6, 2017 order, the trial court stated the factual basis of its holding that Ms. Sallee's conduct constituted a will contest thusly:

The issue is whether the pleadings filed by Ms. Sallee amount to either a direct or an indirect attack upon the validity of the Will which therefore triggers the no-contest provision.

In this case, Ms. Sallee has requested the Court to remove both the executor and the alternate executor, and instead appoint her as executor of Ms. Lloyd's Will. She has made the same request regarding the trustees. She has requested the Court to find both the personal representative and the Estate's attorney in contempt. She has requested the immediate payment of all funds and personal items to which she claims she is entitled, even though she is only the beneficiary of a testamentary trust which has not yet been funded, and not a beneficiary under the Will. Finally, Ms. Sallee produced a quitclaim deed purportedly executed by Ms. Lloyd transferring all of the interest in the property at 112 Pratt Lane in Anderson County to

8

her.

The Court finds that the above actions by Ms. Sallee amount to, at a minimum, indirect attacks upon the validity of her mother's Will. In particular, Ms. Sallee requested the Court to award her the entire interest in 112 Pratt Lane pursuant to the quitclaim deed, which is completely inconsistent with the Will which devises said property forty percent (40%) to Yancy Krebs and sixty percent (60%) to the Yarboro Sallee Trust. No person can take any beneficial interest in a will, and at the same time set up any right or claim of their own, even if well founded, which would defeat, or in any way prevent, the full effect and operation of every part of the will. Duncan v. Peebles, 192 S.W.2d 235, 241 (Tenn. Ct. App. 1945). The pleadings filed by Ms. Sallee requesting the Court to award her the entire interest in the property at 112 Pratt Lane and to grant her immediate possession of said property was an intentional election to claim a complete interest in the 112 Pratt Lane property under the purported quitclaim deed, rather than as a beneficiary of the testamentary trust (60%) under the Will. Thus, Ms. Sallee knowingly chose to challenge or contest the validity of this section of the Will.

Ms. Sallee also contested the Will by filing vexatious pleadings. She requested the removal of the executors and the trustees and appointing herself instead. She asked the Court to enjoin the Estate from any disbursement of funds. She petitioned the Court to require the Estate to provide her with funds to hire her own attorney. She asked the Court to order the immediate payment of all funds which she claimed were owed to her, including rent, and she filed a motion to hold the personal representative in contempt. All of these actions fly in the face of the intended purpose of the no-contest clause in Ms. Lloyd's Will, which was to guard against vexatious litigation, Smithsonian Institution v. Meech, *supra* at 402, and to exclude from her bounty those beneficiaries who unsuccessfully sought to thwart her testamentary wishes. Lytle v. Zebold, 357 S.W.2d 20, 21 (Ark. 1962).

Having found that the actions of Yarboro Sallee have triggered the no-contest provision of her mother's Will, the Court then must determine whether the pleadings filed by Ms. Sallee were done in good faith and with probable cause or reasonable justification. Tate v. Camp, *supra*. With regard to the quitclaim deed produced by Ms. Sallee purportedly transferring the property at 112 Pratt Lane to her, the Estate in its separate complaint, points out the following undisputed facts:

1.  The deed was never recorded with the Register of Deeds

9

for Anderson County;

2. The name of the grantor on the quitclaim deed does not match the name of the owner of record of the realty;
3. The quitclaim deed lacks the identity of the preparer of the document;
4. The notarization on the deed is a jurat, not an acknowledgement, which is required by Tenn. Code Ann. § 66-5-106.

In open Court on March 21, 2017, Ms. Sallee, through her new attorney, Mr. Yuiil stated Ms. Sallee was withdrawing her claim based upon the quitclaim deed. The Court notes that Ms. Sallee's change of position is directly contra to the legal position she took in her Answer to the Complaint filed on October 4, 2016, to clear the cloud upon the title filed by the Estate in the Chancery Court of Anderson County, Tennessee, Docket No. 16CH8283. The actions by Ms. Sallee are clearly distinguishable from the actions of Ms. Winningham in Winningham v. Winningham, *supra*.

This Court finds there is not a scintilla of good faith or reasonable justification in any of the above pleadings filed by Ms. Sallee.

We address first matters related to Ms. Sallee's claims to the Pratt Lane property, following which we will address the conduct of the litigation.

1. The Pratt Lane Property

With respect to the quitclaim deed upon which Ms. Sallee relied to argue that she owned the property at 112 Pratt Lane, the Personal Representative asserted:

The real property located at 112 Pratt Lane consists of two parcels: Tract One acquired by Ms. Sallee's parents "William E. Sallee and wife, Yarboro Barnette Sallee" in 1957 and Tract Two acquired by "William E. Sallee and his wife, Yarboro B. Sallee" in 1960. In connection with the Sallees' divorce, the Decedent quitclaimed Tract One and Tract Two to her ex-husband William E. Sallee by separate deeds in 1986, copies of which deeds are of record in Warranty Deed Book N, Series 16 at Page 451 and Warranty Deed Book N, Series 16 at Page 454 in the Register's Office of Anderson County, Tennessee. On June 10, 2010, the Decedent purchased Tract One and Tract Two from the Estate of her deceased ex-husband William Edgar Sallee, Sr., both of which were transferred to her via a Personal Representative's Deed of record in Deed Book 1523, Pages 1229-1232 in the Register's Office of Anderson County, Tennessee. Copies of all

referenced deeds are attached as collective Exhibit A.

The unrecorded Quitclaim Deed filed by Ms. Sallee (the property description of which includes only Tract One), was allegedly signed by the Decedent on July 16, 2009, a date upon which the Decedent did not own the property. . . .

The record shows the following pleadings filed by Ms. Sallee relative to the Pratt Lane property:

- In a pleading February 26, 2016, Ms. Sallee sought to have the court "ban" the personal representative and estate's attorney from selling the property at 112 Pratt Lane. She alleged that "Brown Lloyd and the executor and his wife, Bryan and Lynn Krebs, are colluding to force petitioner to sell a house she owns 60% of and wants to purchase."[10]

- On May 31, 2016, Ms. Sallee filed a pleading requesting that the court certify a codicil as part of the will; that certain items be distributed to her; and that the court accept a quitclaim deed Mrs. Lloyd had purportedly executed that transferred her interest in the 112 Pratt Lane property to Ms. Sallee. In the pleading, Ms. Sallee alleged:

   The codicil is affirmed in the body of the will that has already been affirmed. Further, all items in the codicil have been distributed by the executor Brown Lloyd and the executor Brian Krebs over one year ago at the funeral of decedent. The executors only withheld those items designated for Yarboro Sallee out of malice toward her.

- In the same pleading, Ms. Sallee also sought to have the court "accept [a] quit claim deed [executed] by Decedent to Petitioner as valid and transfer[] to Petitioner all interests in 112 [Pratt Lane] Property held by Testatrix." The pertinent language of this portion of the motion states:

   Attached is a copy of a quit claim deed signed by testatrix transferring all of her interests in the 112 Pratt Lane property to petitioner for this Court's consideration. *This document clearly sets out that petitioner owns any interests held by testatrix in the property at 112 Pratt Lane and also clearly documents the intentions of testatrix to make this property available for the use*

---

[10] In her pleading, Ms. Sallee requested that the court enjoin the sale of the 112 Pratt Lane property to any party but her "as she owns 60% of the property and it was the will of the decedent that she own the property."

*of petitioner and to gift this property to petitioner.* Petitioner moves that this document be accepted and that she immediately be given access to and possession of this property for her use. Additionally, she requests that this Court order that Brown Lloyd, Brian Krebs and Yancey Krebs be ordered to refrain from any interference with petitioner's use of this property and to stop any harassment and or any interference of any kind with petitioner's life, employment and any aspect of petitioner's life and pursuit of quiet enjoyment and happiness by her such as stalking petitioner, entering on to any property she occupies, contacting employers or potential employers of petitioner, monitoring petitioner in any manner and questioning friends and acquaintances of petitioner, taking pictures of petitioner's vehicles and property and defaming petitioner by making false statements and statements that place her in to a false light calculated to cause damage and destruction in petitioner's life.

Petitioner only seeks to receive those funds and gifts her mother intended for her to have and to be left undisturbed by any further harassment by the present executors Brown Lloyd and Brian Krebs and her former sister Yancey Krebs.

*It is clear that testatrix's intention was to provide a place for petitioner's use to reside if desired by petitioner and to provide security and funds for her welfare, It is also clear that the testatrix intended for petitioner to be treated fairly and for her to have access to any funds and the property at 112 Pratt Lane for her use and that the present and former executors Brown Lloyd and Brian Krebs are colluding to interfere and prevent petitioner's right to such property and funds meant for her.*

Whether one accepts the will and codicil as stated, or the fact that the trust fund was named after petitioner, or that petitioner owns 60% or 100% of the property at 112 Pratt Lane, it was clearly the intention of decedent to assist petitioner in any manner necessary[.] The present executors collectively, in collusion with the other beneficiary Yancey Krebs, have sought to deprive petitioner of her right to access to property, funds and items left to her by her mother and have acted to assist each other while reducing any and all gifts and funds to petitioner.

(Emphasis added). In her prayer for relief, Ms. Sallee sought "[t]hat 100% ownership of the 112 Pratt Lane property be determined to exist by petitioner of the 112 Pratt Lane property pursuant to a quit claim deed signed by testatrix."

- In a pleading filed June 20, Ms. Sallee reiterated the same allegations as above with respect to the quitclaim deed and alleged that "it was clearly the

12

intent of testatrix to provide for the needs of petitioner as she named the trust the 'Yarboro Sallee Trust'[; t]he drafting of the will seems to have been so negligent (or malicious) as to have defeated the clear intents of testatrix." She also continued to allege that she owned the property at 112 Pratt Lane, and asked the court ". . . that she be given all items and funds owed her immediately including all rents paid as petitioner owns the home in full immediately." The prayer for relief requested that the court "order that the 112 Pratt Lane house belongs solely to petitioner and she be given all the keys immediately with the deed signed over to her."

The litany of pleadings shows that Ms. Sallee vigorously advocated that she was entitled to receive a greater portion of the estate than that given to her in the Will and persisted in that belief; as such, her actions constitute an indirect attack on the validity of the Will.

2. The Conduct of the Litigation

In addition to the foregoing, the record contains the following documents which are emblematic of the claims asserted and issues injected into this proceeding by Ms. Sallee:

- On February 8, 2016, Ms. Salle filed a pleading containing four different petitions. In a portion of the pleading styled "Petition for Removal of Estate Attorney Lauren Brown and her Firm Due to Malfeasance and Mishandling of the Estate," Ms. Sallee made the following representation:

  1. First, Ms. Brown is not the attorney who signed the will[.] [T]he attorney who should be handling this is Ms. Gammeltoft[,] and Ms. Brown cannot handle the matter as she was not present at the signing of the will nor did she handle the decedent's estate. Further, there will be the need for the testimony of Ms. Brown concerning issues surrounding the sabotage of petitioner's employment by executor and attorney for the estat[e] Ms. Brown's involvement in this attack on petitioner and collusion with Mr. Krebs and his involvement in other abuses of petitioner and Ms. Gammeltoft will need to testify about the conditions of the will as *it appears that inappropriate actions were engaged in during the will that petitioner will explore prior to deciding whether or not to challenge the will in toto as invalid or fraudulent. At this time petitioner is not challenging the will but petitioner is entitled to all information available concerning and surrounding the preparation, attendance, construction and all other circumstances surrounding the "will"* and petitioner does not waive her right to this information

13

and demands all available information be provided to petitioner immediately.

(Emphasis added.)

- In a pleading filed on February 26, Ms. Sallee made allegations that "assets have been withheld from petitioner in a willful and malicious attempt with collusion by Lauran [sic] Brown and her firm and Brown Lloyd and Krebs to starve petitioner out to force her to sign off on the administration of the estate without any accounting as is her right to demand." She stated that she "has made it clear that at this time she is not challenging the will," yet she also states that the will "has been drafted so badly" and is "subject to varied interpretations." In the same petition, she alleges:

  The clear intent of the will of decedent, who states she is leaving much greater funds and assets to petitioner than the other daughter of decedent due to her health. The intent of the will is clear that petitioner receives any and all funds she wants or needs at any time. The fact that the estate attorney has badly written the will against the stated intentions of the decedent in the body of the will means that that firm is incompetent both ethically and functionally and the interpretation of the will and the intent of the will, which is the duty of the estate attorney, MUST be given to competent and ethical attorney(s) and the executor who has colluded in this twisting of the intent of the decedent's will again makes him grossly unfit to serve as executor and he should be removed immediately he accept a ridiculous payment to petitioner for the item an offer which has been refused but the ring is still being withheld while all other "gifts" have been distributed over nine months ago.

- The February 26 pleading also contains her opposition to the Estate's motion to make a memorandum Ms. Lloyd had prepared purporting to dispose of personal effects a part of the will. Ms. Sallee argued that the memorandum, which she identified as containing a list of personal property her Mother wished to distribute to certain beneficiaries, was "drafted by the estate['s] firm," was "improper," and "does not properly follow the probate laws." She also states, after making these arguments, that "such argument is NOT a challenging of the will."

- On March 5, 2016, Ms. Sallee filed a pleading titled "Responses by Petitioner to Response of 'Estate Attorney Lauren Brown' on Behalf of Alleged 'Executor' (There has been no legal Renunciation by Lloyd Bown) Bryan Krebs." It is unclear from the pleading precisely which pleading filed

14

by the Personal Representative she was responding to, but in her response, Ms. Sallee states:

> The intent of the decedent's will is clear where she states, in her own words, that she wants petitioner to have any funds she needs for any matter including medical expenses, living expenses, educational expenses and any expenses. The badly written will by Brown and Gammeltoft clearly sets out the INTENT OF DECEDENT to assist and provide for any needs of petitioner, any other interpretation is grossly biased and defeats the CLEAR INTENT OF THE DECEDENT AND PETITIONER SHOULD NOT BE PUNISHED FOR THE INCOMPETENT WRITING BY GAMMELTOFT.

Protestations to the contrary notwithstanding, the volume, tone, and largely unsupported allegations in the plethora of pleadings, many of which expressed her dissatisfaction with the administration of the estate in various respects, including the non-payment to her of funds she contended were owed to her, support the court's holding that Ms. Sallee contested the will by filing vexatious pleadings.

The record supports the determination that Ms. Sallee's efforts with respect to the Pratt Lane property and her conduct of this litigation, together with the trial court's adverse determination as to her credibility, support the holding that there was no good faith basis, probable cause, or reasonable justification for Ms. Sallee's efforts to secure a different result than that clearly set forth by her mother in her Will.[11]  We affirm the holding that she was excluded from taking under the will by application of the no contest clause.

### B. Rule 11 Sanctions

Ms. Sallee and Mr. Kaufman next appeal the trial court's award of sanctions; the order making the award, entered August 31, 2017, stated in pertinent part:

> 10. The Court finds that Mr. Kaufman and Ms. Sallee have deliberately attempted to sabotage the closing on the 112 Pratt Lane Property by filing the Lien, and that they filed the Lien only for the reason to tie up the Estate. 11. The Court finds that Mr. Kaufman and Ms. Sallee's filing of the Lien together with their subsequent advocacy of the Lien to the Court was frivolous, done for an improper motive to harass, delay and obstruct

---

[11]  Following entry of the April 6 order, Ms. Sallee filed a motion to alter or amend, as a result of which the court held another hearing to permit Ms. Sallee to testify, after which the court entered another order in which the court detailed her testimony, found her not to be credible, and reaffirmed the April 6 order.

administration of the Estate, and that there was no basis whatsoever to file or advocate for the Lien.

The Court then held:

> ORDERED, ADJUDGED, and DECREED that the Court, on its own initiative, has determined that the filing of the Lien by Ms. Sallee and Mr. Kaufman and the advocacy of the Lien to the Court by Mr. Kaufman on Ms. Sallee's [behalf] violate Tenn. R. Civ. P. 11.02; it is further
> ORDERED, ADJUDGED, and DECREED that the Court, on its own initiative, is assessing sanctions against both Mr. Kaufman and Ms. Sallee pursuant to Tenn. R. Civ. P. 11.03; it is further
> ORDERED, ADJUDGED, and DECREED that Attorney Lisa Gammeltoft, on behalf of the Law Firm Kizer & Gammeltoft, PC, and that Attorney John Rice, on behalf of the Law Firm Elmore, Stone & Caffey, PLLC, are directed to submit affidavits of time and expenses related to their filing the Motion for Order Compelling Yarboro Sallee to Release Lien Wrongfully Recorded Against the 112 Pratt Lane Property and getting the improper Lien removed, with copies of the Affidavits to be served upon Mr. Kaufman, who may show cause for why sanctions should not be awarded in that amount; it is further
> ORDERED, ADJUDGED, and DECREED that the specific award of monetary sanctions shall be taken under advisement until further Court Order.

The court entered an order on September 21 awarding fees of $14,837.49 to Mr. Rice and $1,682.60 to Ms. Gammeltoft. On March 27, 2018, Appellants filed a motion pursuant to Tennessee Rule of Civil Procedure 60.02(2) and (5) to set aside the sanctions on the ground of Mr. Kaufman's excusable neglect; the court granted the motion "to consider the arguments [Ms. Kaufman] failed to make prior to the entry of the order on September 25, 2017 as to why he and his client should not be found in violation of Rule 11.02(1) and (2)."[12]  On May 15, 2008, the court entered an order reaffirming the August 25, 2017 order awarding sanctions.[13]  On appeal, Ms. Sallee and Mr. Kaufman assert that imposition of sanctions was error because "there was a good faith basis for the extension of existing law regarding the filing of the lien or, in the alternative, . . . the sanctions . . .

---

[12]  The file stamp date on the order setting the amount of sanctions is September 21, 2017.

[13]  In the order, the court addressed and rejected three contentions Appellants raised related to the award of sanctions: (1) that Rule 11 does not permit a court to award sanctions *sua sponte*; (2) that sanctions cannot be awarded on the court's initiative unless the show cause is issued before the suit is voluntarily dismissed; and (3) that sanctions could not be awarded against Ms. Sallee pursuant to Rule 11.02(2) because she was a represented party.

[were] assessed contrary to the mandatory provisions of T.R.C.P. 11.03 subsections (2) and (3)."

The standard of review we apply to this decision was set forth in *Brown v. Shappley*:

> We review a trial court's ruling on a Rule 11 motion under an abuse of discretion standard. *Hooker v. Sundquist,* 107 S.W.3d 532, 535 (Tenn. Ct. App. 2002). An abuse of discretion occurs when the decision of the lower court has no basis in law or fact and is therefore arbitrary, illogical, or unconscionable. *Id.* (citing *State v. Brown & Williamson Tobacco Corp.,* 18 S.W.3d 186, 191 (Tenn. 2000)). Our review of Rule 11 decisions is governed under this deferential standard since the question of whether a Rule 11 violation has occurred requires the trial court to make highly fact-intensive determinations regarding the reasonableness of the attorney's conduct. *Id.* We review the trial court's findings of fact with a presumption of correctness, unless the evidence preponderates against the finding. *Id.*; Tenn. R. App. P. 13(d).

290 S.W.3d 197, 200 (Tenn. Ct. App. 2008).

We first address Appellants' argument that sanctions were not warranted because they had a good faith basis for filing the lien, i.e., to secure what they considered was a meritorious quantum meruit claim for legal services rendered by Ms. Sallee to the decedent during her life.

Rule 11.03(1)(b), permits a court, on its own initiative, to issue an order describing conduct that appears to violate Rule 11.02 and directing a party to show cause why it has not violated the rule.[14] The August 31, 2017 order gave Appellants notice of the conduct

---

[14] Tennessee Rule of Civil Procedure 11 provides in part pertinent to this appeal:

11.02. Representations to Court

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
**(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
**(2)** the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

that the court determined warranted sanctions and allowed them ample time to provide a response to the show cause order; the September 25 order setting the amount of sanctions was duly entered, withg no response to the August 31 order being filed on behalf of Appellants. Six months later, Appellants filed a Rule 60.02 motion to set aside the September 25 order, which was granted by the trial court; after considering Appellants' proof as to why sanctions were not warranted, the court reaffirmed the September 25 order.

---

**(3)** the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
**(4)** the denial of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

11.03. Sanctions

If, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision 11.02 or are responsible for the violation.

**(1) How Initiated.**
* * *
(b) *On Court's Initiative.* On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision 11.02 and directing an attorney, law firm, or party to show cause why it has not violated subdivision 11.02 with respect thereto.
**(2) Nature of Sanctions; Limitations.** A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (a) and (b), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.
(a) Monetary sanctions may not be awarded against a represented party for a violation of subdivision 11.02(2).
(b) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.
**(3) Order.** When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

Tenn. R. Civ. P. 11.03. Rule 11.03(2)(a) does not preclude the award against Ms. Sallee, inasmuch as she is a licensed attorney in the State of Tennessee, and subject to the requirements of the Rules of Professional Conduct, memorialized at Tennessee Supreme Court Rule 8, and since, at various times herein she was acting pro se.

18

We find no violation of Rule 11 or abuse of the court's discretion in either making the initial determination that sanctions were warranted or in the manner in which the amount of sanctions was set. First, the quantum meruit claim Ms. Sallee asserted was for services rendered in a life insurance proceeds matter that had nothing to do with the Pratt Lane property; the insurance matter was not a "right of action" to which the lien authorized by Tennessee Code Annotated section 23-3-102[15] and -103[16] would apply. Second, to the extent Ms. Sallee sought payment for services rendered in representing her mother in the life insurance matter, she should have done so as a creditor of the estate, pursuant to Tennessee Code Annotated section 30-2-307.[17] The trial court properly held that there was no legal basis for filing a lien to secure the quantum meruit claim, thereby requiring the Estate to seek a court order requiring Ms. Sallee to release the lien.

There is likewise no merit to Appellants' argument that the Rule 11.03(2)(b) prohibits the award of sanctions because "the dismissal of the lien was voluntary, and it occurred before the show cause order." The lien was not a "claim" within the meaning of Rule 11.03(2)(b)[18] and there was no dismissal of the lien, voluntary or involuntary; Ms.

---

[15] Tennessee Code Annotated section 23-3-102 states:

Attorneys and solicitors of record who begin a suit shall have a lien upon the plaintiff's or complainant's right of action from the date of the filing of the suit.

[16] Tennessee Code Annotated section 23-3-103 states:

Any attorney or solicitor who is employed to prosecute a suit that has already been brought in any court of record shall have a lien upon the plaintiff's right of action from the date of the attorney's or solicitor's employment in the case; provided, that the record of the case shall first be made to show such employment by notice upon the rule docket of such court, by a written memorandum filed with the papers in the case or by notice served upon the defendant in the case.

[17] Tennessee Code Annotated section 30-2-307(a)(1) states:

All claims against the estate arising from a debt of the decedent shall be barred unless filed within the period prescribed in the notice published or posted in accordance with § 30-2-306(b).

[18] Appellants conflate the meanings of "claim" and "lien." Tenn. R. Civ. P. 11.03(2)(b). As this Court stated in *Montpelier v. Moncier*:

"Claim" or "claims" is commonly used to describe such an application for relief [within a lawsuit], and a party is permitted to state as many separate claims or defenses as he or she has in his or her pleading. . . .

[V]arious rules illustrate this construction of the word "claim" by referring to claim(s) as a part of a complaint or pleading and not constituting the pleading itself. *See* Tenn. R. Civ. P. 8.01 ("a pleading ... shall contain (1) a short and plain statement of the claim

Sallee was ordered to release the lien.

Discerning no abuse of discretion in the court's imposition of sanctions, we now turn to the amount awarded. The attorneys for the personal representative and the estate submitted detailed affidavits of the time they dedicated to resolving the issue of the lien filed against the 112 Pratt Lane Property; the court awarded fees equal to the amount incurred for getting the order to release the lien. The affidavits of counsel are sufficiently detailed as to both the work performed and time spent, and Appellants do not cite evidence that preponderates against the amount awarded.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court in all respects.

_____

RICHARD H. DINKINS, JUDGE

---

showing that the pleader is entitled to relief"); Tenn. R. Civ. P. 10.02 ("[e]ach claim founded upon a separate transaction or occurrence ... shall be stated in a separate count ... whenever a separation facilitates the clear presentation of matters set forth"). *See also* Tenn. R. Civ. P. 12.02; 13.01, 13.05, 13.09; 18.01 and 18.02.

No. E2018-00448-COA-R3-CV, 2019 WL 990529, at *5 (Tenn. Ct. App. Feb. 28, 2019) (quoting *McCord v. HCA Health Serv's. of Tennessee, Inc.,* No. M2016-00240-COA-R3-CV, 2016 WL 5416334, at *3, *4 n. 1 (Tenn. Ct. App. Sept. 27, 2016) *perm. app. denied* (Jan. 19, 2017)). This is not a suit to recover damages but, rather, a proceeding to administer an estate; any "claim" that Ms. Sallee has in the proceeding is as creditor or beneficiary of the estate.